## *In re* BERNSEE'S WILL.

(*Supreme Court, General Term, Second Department.* February 8, 1892.)

1. WILLS—PROBATE—CORROBORATING ATTESTING WITNESS.

    In a controversy as to the due execution of a will, in which the two attesting witnesses flatly contradicted each other as to testatrix's signing the will or acknowledging her signature in their presence, it appeared that one of the proponents was present at the time of the alleged execution of the will, and might have corroborated the testimony of their witness, but proponents neglected to call him for that purpose. *Held,* that their failure so to do discredited the testimony of their attesting witness.

2. SAME—COMPETENCY OF DEVISEE.

    Code Civil Proc. § 829, forbidding a person to testify in his own behalf, in a controversy with the personal representative of a decedent, as to any transaction had by him with, or statement made to him by, a deceased person, will not render a devisee, present at the execution of the will under which he claims, incompetent to corroborate the statements of an attesting witness to the will, as to the due execution thereof.

3. SAME—UNDUE INFLUENCE—EVIDENCE.

    Testatrix executed a will in favor of her two sons and two daughters. Afterwards she went to live with her sons, and executed a second will, disinheriting the daughters, and leaving the whole property to the sons. Prior thereto her relations with the daughters had been of the most affectionate character, while the will referred to unfilial conduct on the part of the daughters, which was shown to be unfounded. Testatrix was very nervous when she executed the second will. Proponents failed to call the draughtsman of the will, and there was ill feeling between the daughters and one of the sons and his wife. *Held,* that the evidence was sufficient to show undue influence in the execution of the second will.

    BARNARD, P. J., dissenting.

Appeal from surrogate's court, Kings county.

Proceedings by Christian D. Bernsee and another for the probate of the will of Adeline D. Bernsee, deceased. Code Civil Proc. N. Y. § 829, pro-

vides: "Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through, or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest, against the executor, administrator, or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through, or under a deceased person or lunatic, by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person or lunatic." From a decree admitting the will to probate Adeline O'Donohue and another appeal. Reversed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Rufus O. Catlin,* special guardian for John B. Catlin. *William C. De Witt,* for Adeline O'Donohue. *William R. Syme, (Daniel Daly,* of counsel,) for Frederick Bernsee.

PRATT, J. It is plain that these contestants cannot be deprived of their rights in the property of which Adeline D. Bernsee died seised, unless the will under consideration is in law valid. The first question is whether a due execution was sufficiently proven. The subscribing witnesses only were called upon this branch of the case,—one George H. Black, a brother-in-law of one of the two beneficiaries under the will; the other, Dr. Bellows, who had previously prescribed for the testatrix, and attended the family of one of the two beneficiaries; and also the husband of one of the daughters of the testatrix, who was positively cut off from any share in her property. The will was witnessed in the office of Dr. Bellows, to which testatrix, Mr. Black, and Christian D. Bernsee, son of testatrix, went together from the house of Mr. Bernsee, at which testatrix was residing at the time. Mr. Black testified positively that testatrix told Dr. Bellows that she came there to have him witness her signature to the will, which she took out of her satchel; that she signed it at the doctor's desk, and said, "I declare this to be my last will and testament," and then signed it; that she requested him to sign the will as a witness, which he did; that she requested the doctor to witness the will, which he did; that both he and the doctor stood side by side looking over the shoulder of the testatrix at the paper when she signed the will. This testimony clearly proved all of the statutory requisites for a due execution of a will. But this witness testified, with equal positiveness, that Christian D. Bernsee, during all of this time, sat in a chair in the same room; that he did not at any time say one word about the purpose for which they came there, or to the doctor about his witnessing the will. Dr. Bellows testified equally positively that Christian D. Bernsee produced the will; that he told him that they had come there for the purpose of having him witness his mother's will; that he asked him (the doctor) to sign his name twice, saying that it was all right to do so; that the clause' attested (meaning the attestate clause) was a regular attachment; that he took the will to the doctor's desk, and he signed it then; that he did not read the attestate clause; that the testatrix sat at the time in her seat in his office; that he did not see any signature of testatrix on the paper; that her name was not on the paper when he signed his name; that testatrix said nothing to him; that she did not, according to his recollection, leave the rocking-chair where she sat while in his office; that she was extremely nervous and excitable; said that she was nervous; that she did not ask him to sign the will, and that her son did; positively, that he did not look over her shoulder, but over Mr. Black's shoulder; that he has no recollection of seeing her sign the will or getting out of her chair. This testimony, contradictory in almost every particular of Mr. Black's, if true, clearly proves that the will was not duly executed. Under these circumstances, the proponents of the will were plainly called upon to corroborate the testimony of Mr. Black

by other testimony, if within their reach.   Christian D. Bernsee was credibly present during all of the interview at Dr. Bellows' office.   He was a competent witness to disprove, if he could, the testimony of Dr. Bellows as to his producing the will; as to his declaring the purpose for which they went there; as to his request to Dr. Bellows to witness the will, to sign in two places; as to seeing him looking over the shoulder of testatrix while she sat at his desk. This was in no sense prohibited by section 829 of the Code of Civil Procedure; and it is doubtless correct to say that he was a competent witness to testify as to testatrix declaring to the subscribing witnesses that it was her will, and that she went to the desk, and signed it.   *Pinney* v. *Orth*, 88 N. Y. 447; *Simmons* v. *Havens*, 101 N. Y. 428, 5 N. E. Rep. 73; *Petrie* v. *Petrie*, (Sup.) 6 N. Y. Supp. 831.   This witness was not even offered as such by proponents; *non constat*, if he had been, the contestants would not have objected, but trusted to their opportunity to develop a case of undue influence.   The failure to call this witness by proponents to corroborate Mr. Black in reality strengthens the presumption that Dr. Bellows' testimony was true; for it must be remembered that Mr. Black was asked on his cross-examination whether Christian D. Bernsee said anything more on that occasion than to introduce him to the doctor.   He said, "Nothing more."   "*Question*. You will swear to that positively?   *Answer*. Yes, sir.   Q. You are just as certain of that as of anything else that you have testified to?   A. I am positive of it; I will swear to it."   If, therefore, Mr. Bernsee was competent to corroborate Mr. Black in this matter, upon which he was flatly and positively contradicted by Dr. Bellows, and he clearly was, his not being called leaves no reasonable doubt of the truth of Dr. Bellows' testimony; and, if so, Mr. Black is to be discredited upon this point; and, as he is equally positive in this as in his other statements, he ought to be discredited in what he says about the signing of the will by testatrix, without which the execution of the will was not proved.

2. Was the will framed by undue influence?   While this fact is to be proved, not presumed, the undisputed facts tend strongly to the conclusion that such was the case.   A prior will which divided the property equally between the children of testatrix, two sons and two daughters; uninterrupted affectionate relations between testatrix and at least one of the daughters; her residence with the sons at the time of the making of the will; her refusal, or, at least, neglect, to see either daughter after she took up her residence with the sons; the refusal of the daughters to recognize the alleged wife of one of the sons, as not married to him; the declaration in the will of unfilial conduct of the daughters, against the uncontradicted proof; the failure to call the draughtsman of the will; the presence of the son at the time of the execution, when, if Mr. Black is to be believed, he had nothing to do, and did nothing; her nervous and very excited condition at the time, which is not disputed; her entire disinheritance of her daughters, and the giving of her entire estate to her sons, with whom she lived,—all, unexplained, tend powerfully to show undue influence.   These circumstances called strongly upon the surrogate for the exercise of his discretion in calling for the draughtsman of the will to ascertain who prompted it, and the conditions surrounding its preparation. Upon the facts, therefore, the judgment should be reversed.   There were several rulings of the surrogate, in the rejection and striking out of testimony, which appear to have been erroneous, but which it is unnecessary to consider.

DYKMAN, J., concurring.   BARNARD, P. J., dissenting.